NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 4 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-50406 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00354-AB-1 |
| v. | |
| JORGE RANGEL, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Submitted June 4, 2020[**]
Pasadena, California

Before: CALLAHAN and NGUYEN, Circuit Judges, and KANE,[***] District
Judge.

Jorge Rangel appeals his conviction and sentence following a jury trial for

possessing methamphetamine with the intent to distribute in violation of 21 U.S.C.

---

[*]  This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]  The panel unanimously concludes this case is suitable for decision
without oral argument.  See Fed. R. App. P. 34(a)(2).

[***]  The Honorable Yvette Kane, United States District Judge for the
Middle District of Pennsylvania, sitting by designation.

§ 841(a)(1), (b)(1)(A)(viii) (Count 1), possessing a firearm in furtherance of that crime in violation of 18 U.S.C. § 924(c)(1)(a)(i) (Count 2), and possessing that firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 3). Rangel contests the sufficiency of the evidence and various determinations of the district court. He also seeks resentencing under the First Step Act. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

1. Rangel waived his argument that the evidence on Count 3 was insufficient under *Rehaif v. United States*, 139 S. Ct. 2191 (2019), because he did not argue at the district court that there was insufficient evidence that he knew of his *status* as a felon. His motion for acquittal on Count 3 was brought on the specific ground that "there [was] not sufficient evidence of knowing *possession* by Mr. Rangel." *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (holding that "when a Rule 29 motion is made on a specific ground, other grounds not raised are waived").

On plain-error review, Rangel's sufficiency-of-the-evidence argument fails. *See United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). There was no "obvious" error, *United States v. Benamor*, 937 F.3d 1182, 1188 (9th Cir. 2019), because Rangel stipulated that, "[a]t the time of the offenses alleged in the Indictment, [he] had been convicted of at least one felony crime punishable by a

term of imprisonment exceeding one year." A rational juror could infer that Rangel was aware of his status as a felon. *See Nevils*, 598 F.3d at 1164.

Relatedly, no plain error resulted from the indictment's failure to allege, and the district court's failure to instruct the jury on, the knowledge element discussed in *Rehaif*. As in *Benamor*, here "there is no probability that, but for the error, the outcome of the proceeding would have been different," *id.* at 1189; Rangel had been convicted of three crimes for which he was punished by imprisonment for terms exceeding one year, and he actually served over a year in prison for at least two of them. *See United States v. Johnson*, 963 F.3d 847, 852 (9th Cir. 2020) (holding that we may, as part of our sufficiency-of-the-evidence analysis on plain-error review, "review the entire record on appeal—not just the record adduced at trial").

2.  The district court did not plainly err by adopting the government's proposed verdict form.[1] There was no error in the verdict form because, as Rangel acknowledged at the district court, there is no meaningful difference between "pure" and "actual" methamphetamine. *See United States v. Hernandez*, 476 F.3d 791, 795 (9th Cir. 2007) (equating "pure" and "actual" methamphetamine). And

---

[1] Rangel did not argue at the district court that the verdict form was flawed because it asked the jury to consider the "net weight of . . . actual methamphetamine" instead of "pure" methamphetamine. To the contrary, he suggested that the terms "pure" and "actual" methamphetamine were interchangeable.

3

even assuming error, it would not have affected the outcome of the proceedings. *See United States v. Espino*, 892 F.3d 1048, 1051 (9th Cir. 2018). Rangel argues the jury found he had possessed 482 grams of methamphetamine (the net weight) rather than 467 grams (the "pure" methamphetamine), both of which exceed the 50-gram threshold in 21 U.S.C. § 841(b)(1)(A)(viii).

3. The district court did not abuse its discretion by refusing to give a lesser-included-offense instruction for Count 1. *See Hernandez*, 476 F.3d at 797–98. The district court considered at length whether to give an instruction on simple possession, recognizing that simple possession is a lesser-included offense of possession with intent to distribute. Under *Hernandez* and *United States v. Vaandering*, 50 F.3d 696 (9th Cir. 1995), the district court reasonably concluded that, on these facts, a rational jury could not find Rangel guilty of simple possession but not guilty of possession with intent to distribute. *See Hernandez*, 476 F.3d at 798.

4. The district court did not abuse its discretion in its evidentiary rulings.

a. Jail-Cell Phone Conversations

The district court carefully considered the parties' arguments and did not clearly err in finding that a conspiracy existed "to possess the handgun and transfer the handgun to another person." *See United States v. Bowman*, 215 F.3d 951, 960 (9th Cir. 2000). "[S]ubsequent events," including the search of East Los Madness

4

that turned up a .40 caliber firearm and two magazines—which matched the items on the calls—offered corroborating evidence of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 181 (1987). Similarly, the district court did not clearly err in finding that the calls were made in furtherance of the conspiracy; the calls "further[ed] the common objectives of the conspiracy" by securing Rangel's promise to make the transfer on a particular date. *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988).

    b.  <u>Coded Language Expert</u>

The coded language expert explained how he applied his knowledge to interpret the words at issue. *See United States v. Vera*, 770 F.3d 1232, 1241 (9th Cir. 2014). The expert first discussed his method for interpreting coded language and then explained how, based on context, he determined that the terms "baby," "two cartridges," and "40 gigs" were coded and what the coded meanings were. Rangel's characterization of the expert's opinions as "speculative" bears on the weight of the testimony, not on its admissibility. As a seventeen-year ATF veteran who on at least two prior occasions had testified in federal court with respect to coded language, the expert was qualified to testify.

    c.  <u>Drug-Trafficking Expert</u>

An expert may testify regarding the value of drugs, dosing, and the typical behaviors of drug traffickers. *See, e.g., United States v. Gonzales*, 307 F.3d 906,

5

911–12 (9th Cir. 2002). Having worked as a DEA agent for six years, and having participated in over fifty investigations involving narcotics trafficking, the drug-trafficking expert possessed the necessary "qualifications to testify." *United States v. Murillo*, 255 F.3d 1169, 1178 (9th Cir. 2001), *overruled on other grounds as recognized by United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007).

d. <u>Narcotics-Detecting Canine Expert</u>

Before the canine expert testified at trial, the government sent three emails to Rangel's counsel containing the canine's training logs.[2] On appeal, Rangel's counsel does not dispute the fact of the government's disclosure or argue that it was inadequate.

The district court did not abuse its discretion in allowing the canine expert to testify based on the information it had at the time of its ruling. The district court was in possession of the expert's supplemental report, which informed it that he would give "extensive testimony regarding his and [the canine's] training and certification" and would "testif[y] regarding [the canine's] reliability rating of 100 percent"—all of which he later did. *United States v. Gadson*, 763 F.3d 1189, 1202–03 (9th Cir. 2014). Given this information and that Rangel "did not proffer

---

[2] We grant the government's motion to take judicial notice of the fact that, on November 8, 2017, the government sent three emails to Rangel's trial counsel that included attachments that were labeled as, and were purported to contain, training logs for the canine. *See* Doc. No. 24; *cf. Smith v. LAUSD*, 830 F.3d 843, 851 n.10 (9th Cir. 2016).

evidence to the contrary," "the district court did not abuse its discretion in admitting evidence of [the canine's] alert."[3] *Gadson*, 763 F.3d at 1203.

e. The district court did not plainly err by failing to make explicit reliability and relevance findings for each expert.[4] Because the expert testimony was not essential to the government's case given the physical evidence, any error was harmless. *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019). Similarly, the district court did not plainly err by not explicitly engaging in the Federal Rule of Evidence 403 analysis for each expert. The experts' testimony was not unfairly prejudicial, confusing, misleading, or needlessly cumulative.

5. The district court correctly determined the mandatory minimum sentence on Count 1 because conspiracy to possess marijuana with intent to distribute is a "felony drug offense" under 21 U.S.C. § 802(44). The "criminal agreement" necessary to prove a violation of 21 U.S.C. § 846 is "the *actus reus*" of the offense, *United States v. Shabani*, 513 U.S. 10, 16 (1994), and thus constitutes "conduct" for purposes of § 802(44), *see United States v. Abboud*, 273 F.3d 763, 766 (8th Cir. 2001) ("The alleged agreement itself is the prohibited conduct targeted by the

---

[3] Rangel also discusses elements of the expert's testimony that in Rangel's view cast doubt on the testimony. But those were factors for the jury to weigh in deciding whether to credit the testimony (and the canine's alert); they did not bear on the district court's decision to admit the testimony.

[4] Rangel did not argue at the district court that that court failed to make the required findings.

conspiracy statute . . . ."). Further, a conspiracy arising out of an agreement to possess marijuana with intent to distribute it "relates to" marijuana.

Rangel's related constitutional arguments fail. A facial challenge is not available in this context.[5] *See United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir. 1991). And his as-applied challenge merely reframes his meritless statutory interpretation arguments.

6. We do not remand for resentencing in light of the First Step Act because Rangel's sentence was "imposed" before the Act's enactment. Pub. L. 115-391, § 401(c). A sentence is "deemed imposed when it is announced by the district judge in open court." *United States v. Colace*, 126 F.3d 1229, 1231 (9th Cir. 1997); *cf. United States v. Voris*, 964 F.3d 864, 875 (9th Cir. 2020) (holding that § 403 of the First Step Act, which is "applicab[le] to pending cases" in exactly the same way as § 401, "does not apply to cases pending on appeal in which the district court sentenced the defendant before the enactment of the First Step Act").

7. The district court plainly erred by declaring Rangel permanently ineligible for federal benefits. *See United States v. Campbell*, 937 F.3d 1254,

---

[5] It would also fail on the merits: the words in the statute have settled meanings and, for the reasons discussed above, "a reasonable person would know" that conspiring to possess marijuana with intent to distribute it is conduct relating to marijuana. *United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009); *Burgess v. United States*, 553 U.S. 124, 135 (2008) (characterizing the felony-drug-offense definition as "coherent, complete, and by all signs exclusive").

1256–57 (9th Cir. 2019). The government concedes that the district court clearly erred by relying on 21 U.S.C. § 862(a), which applies to drug traffickers, rather than § 862(b), which applies to drug possessors.[6] And the permanent ban affected Rangel's substantial rights and the fairness and integrity of the proceedings. *See United States v. Joseph*, 716 F.3d 1273, 1281 (9th Cir. 2013) (affirming "there is little reason not to correct plain sentencing errors when doing so is so simple a task" (quoting *United States v. Tapia*, 665 F.3d 1059, 1063 (9th Cir. 2011))). We remand for the limited purpose of correcting the length of the benefits ban. We otherwise affirm.

**AFFIRMED IN PART, REVERSED IN PART.**

---

[6] Under § 862(b)(1)(B), Rangel would be "ineligible for all Federal benefits for up to 5 years." 21 U.S.C. § 862(b)(1)(B).